## NATIONAL SURETY CO. v. GREEN.

No. 15122—Opinion Filed June 23, 1925.

Rehearing Denied Oct. 20, 1925.

(Syllabus.)

### Guardian and Ward—Liability on Guardian's Sale Bond.

When a guardian gives a bond as provided by section 1477, Comp. Stats. 1921, before selling his ward's real estate, said bond is cumulative of and supplemental to the original guardian's bond, and as long as the same remains in force and effect the sureties on said bond are liable for defalcation affecting any of the funds coming into the guardian's hands by reason of such sale so long as the same remain in his hands, or he is held accountable therefor, even though they may have been subsequently invested by direction of and under order of the county court having jurisdiction of such guardian.

Error from District Court, Mayes County; A. C. Brewster, Judge.

Action by Louis F. Green, a minor, by Harry Seaton, his guardian, against Ned Mayes and the National Surety Company, a corporation. Judgment for plaintiff, and defendant National Surety Company brings error. Affirmed.

N. A. Gibson, J. L. Hull, and T. L. Gibson, for plaintiff in error.

R. A. Wilkerson, for defendant in error.

PHELPS, J. Ned Mayes was appointed

guardian of Louis F. Green, minor, by the county court of Mayes county. He made application to the court and was granted permission to sell certain real estate belonging to said minor for the purpose of "loaning the proceeds thereof out at interest, or investing the same in some productive stock," and in pursuance of an order of court and in compliance with section 1477, Comp. Stats. 1921, gave additional bond, with the National Surety Company, plaintiff in error herein, as the surety.

After the proceeds of such sale came into his hands, the guardian, with the approval of the county court, lent the money upon real estate security for a few months, collected the loan and upon order and with the approval of the county court, invested $2,000 of the money in the purchase of a tract of land in Nowata county, taking the title in the name of the minor. The record discloses that through the negligence of the guardian taxes on the land thus purchased were not paid, although the guardian had sufficient money on hand belonging to his ward at all times with which to pay such taxes, and the land was allowed to sell at resale for the taxes. At a hearing by the county court upon the report of the guardian, the county court disapproved the report of said guardian and found that the guardian was indebted to his ward in the sum of $1,005.73, in addition to whatever amount might be due by reason of the loss of the Nowata county land. When the minor arrived at his majority he borrowed $400 and purchased a quitclaim deed for the land from the purchaser at the tax resale. He then filed suit in the district court of Mayes county and obtained judgment against the National Surety Company, the surety on the guardian's additional bond, for the sum of $806.54, and costs, including the $400 the ward was compelled to pay in order to procure title to his real estate, from which judgment and order of the court overruling motion for new trial appeal is prosecuted to this court.

Plaintiff in error denies liability upon the guardian's additional bond in question, claiming that when the real estate was sold and the money accounted for by the guardian, and particularly after the money had been invested under the direction of the county court, that the surety was discharged from further liability; that any liability that might arise was the liability under the original guardian's bond instead of the "additional" bond, although the record discloses that the additional bond was kept in force

for several years after its execution and the annual premiums paid thereon. Therefore, the primary question for us to determine here is whether or not the surety company is liable for loss to the ward through the fault of the guardian, or must the ward look to the sureties on the guardian's original bond.

Section 1443, Comp. Stats. 1921, provides that:

"Before the order appointing any person guardian under this article takes effect, and before letters issue, the judge must require of such person a bond to the minor, with sufficient sureties, to be approved by the judge, and in such sum as he shall order. * * *"

The record does not disclose how much bond was required by the court at the time the guardian was appointed; however, as a general rule the county courts of this state require the guardian to file such a bond as is required of administrators, to wit, a bond in the sum of double the amount of the value of the personal property, and double the amount of the value of the annual rentals of the real estate, and as the record discloses that all the property that came into the hands of the guardian was the proceeds of the sale of the real estate, it is fair to presume that the original guardian's bond was only a nominal bond. It was clearly the intention of the Legislature that the guardian's estate should not be burdened with expense in giving unnecessary bonds, and as the real estate could not be disposed of except upon order of the county court, additional bond is required in case of sale of the real estate of the minor in order to fully protect the interest of the minor in the funds derived from such sale, by section 1477, Comp. Stats. 1921, which reads:

"Every guardian authorized to sell real estate, must, before the sale give bond to the county judge, with sufficient surety, to be approved by him, with condition to sell the same in the manner and to account for the proceeds of the sale as provided for in this article."

Under the rule laid down in Knox et al. v. Cruel, 75 Okla. 274, 183 Pac. 427, sureties on a guardian's bond for the sale of real estate, executed in pursuance of section 1477, Comp. Stats. 1921, are not liable for misappropriation of guardian's funds not arising from the sale of real estate in relation to which the bond was executed; however, in this case the record discloses that all of the funds coming into the hands of the guar-

dian were derived from the sale of the real estate, to protect and save to the minor the purchase price of which made the execution of the bond in question necessary. In the case of National Surety Company v. Washington, 67 Okla. 286, 170 Pac. 1142, we find the following statement in the body of the opinion:

"The latter bond (referring to the 'additional' sale bond) being merely cumulative, the sureties on the former bond (general guardian's bond) were liable for any shortage of the guardian, regardless of the liability of the surety on the sales bond."

And in Berry v. Tolleson, 68 Okla. 158, 172 Pac. 630, the following statement is made:

"The statute requires the bond to cover the proceeds of the sale in addition to the general bond of the guardian, and was enacted to meet the conditions arising from just such fraud as appears here. This bond contemplates a sale being conducted as provided by law. It covers the collection and retention of purchase price. If guardian fails to collect, or after collecting, fails to return the purchase price, the liability accrues upon his bond."

The principal obligation clause in the "additional" bond sued on herein contains this provision:

"Now, therefore, if the said Ned Mayes, as such guardian, shall faithfully execute the duties of such trust according to law, then this obligation to be void, otherwise to remain in full force and effect."

In view of the fact that this court has heretofore held (National Surety Company v. Washington, supra) that the "additional" bond is cumulative, we cannot escape the conclusion that the obligation rests upon the surety on the "additional" bond to make good any default of the guardian during the entire period that any of the funds derived from the sale of real estate may remain in his hands as such guardian, and we cannot agree with the contention of plaintiff in error that when the funds are once invested and the proceeds of the investment are again returned to the hands of the guardian, the funds are not the proceeds of the sale of the real estate.

Counsel for plaintiff in error cite and quote extensively from Fay v. Taylor, 11 Metcalf, 529, which is a Massachusetts case in which the opinion was rendered in 1846, and which seems, upon its face, to reasonably uphold the contention of plaintiff in error. This is the only authority cited by plaintiff in error which reasonably tends to uphold its contention, and while we have no disposition to criticize this authority because of its age, in the absence of any suggestion that it is based upon a statute similar to ours, and in view of the fact that, in our judgment our statute was expressly designed to protect the funds of the ward arising from the sale of real estate so long as any portion thereof was in the hands of his guardian, we are not willing to follow the doctrine laid down in the Massachusetts case.

The various items constituting the total which the court found was due from the surety company being fairly established by the evidence appearing in the record, we see no reason why the judgment of the district court should be disturbed, and seeing none, the same is hereby affirmed.

NICHOLSON, C. J., and MASON, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 28 C. J. p. 1290, § 488; 43 L. R. A. (N. S.) 308; 12 R. C. L. p. 1161.